UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHELDON GARTH WILLIAMS,

      Petitioner,

      v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

      Respondents.

Case No. 2:26-cv-1525-KCD-KRH

_____/

## <u>ORDER</u>

Petitioner Sheldon Garth Williams is a Jamaican citizen who has a final order of removal. (*See* Doc. 3-1 at 10.)[1] Last year, he was detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of his continued custody. (Doc. 1.) For the reasons below, the petition is **DENIED WITHOUT PREJUDICE**.

## I. Background

Williams was ordered removed but granted deferral of removal to Jamaica by an immigration judge, which became final on April 7, 2012. (Doc. 3-1 at 10.) Under that order, Williams cannot be removed to Jamaica, but it does not preclude his removal to another country.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

On November 25, 2025, Williams was returned to immigration custody to effectuate third-country removal. (*Id.* at 4, 12.) On April 27, 2026, Williams was served with a Notice of Removal to Mexico. (*Id.* at 9.) ICE attempted to remove Williams to Mexico, however, he refused to sign the Notice of Removal. (Doc. 3-2 ¶ 7.) Because Williams would not sign the Notice of Removal to Mexico, ICE has escalated the matter to proceed with third-country removal to another country. (*Id.*) Williams was provided with the Warning for Failure to Depart and the Instruction Sheet to Detainee Regarding Requirement to Assist in Removal and he refused to sign both documents. (Doc. 3-1 at 1, 2.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

2

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide

3

evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Williams has been detained longer than six months. Yet the Government argues that when the habeas petition was filed, he had been locked up for only 162 days—just shy of the required six-month mark. Because *Zadvydas* creates a six-month window of presumptive reasonableness, the Government concludes we must reflexively throw out the petition as premature. (Doc. 3 at 5.) The Court is not convinced. As a matter of plain fact, Williams's continuous custody has now sailed past the *Zadvydas* threshold.

The writ of habeas corpus does not operate in a time capsule, nor is it a static historical exercise frozen on the day the clerk stamps the docket. Its entire purpose is to test the validity of an ongoing confinement. *See, e.g.*, *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of the prisoner's current detention."); *Lane v. Williams*, 455 U.S. 624, 631 (1982) (explaining that where detainment or its consequences have expired, a habeas petition is moot). Executive detention that was presumptively reasonable on day 162 does not get a free pass when it stretches past day 186. To accept the Government's rigid timeline would work a complete absurdity, reducing these cases to a bureaucratic game of whack-a-mole. If this Court were to throw out

4

the petition today, Williams could simply turn around and file an identical petition this afternoon—forcing the parties and this Court to duplicate this exercise all over again next week. The law does not require such senseless procedural hoop-jumping. Because Williams detention has now eclipsed the six-month mark, the dispute is live and ready for review. *See Nagy v. United States Att'y Gen.*, No. 19-23933-CV, 2019 WL 13215658, at *2 (S.D. Fla. Nov. 5, 2019) ("In order to state a due process claim under *Zadvydas*, a petitioner must have been *detained* for more than six months." (emphasis added).)

On the merits, ICE took Williams into custody on November 25, 2025, which is beyond six months. But according to the unrebutted record, he has since refused removal to Mexico. (Doc. 3-2.) Such conduct tolls the detention period. *See Akinwale*, 287 F.3d at 1052 n.4 (stating that "removal period shall be extended ... if the alien ... acts to prevent the alien's removal subject to an order of removal").

Under 8 U.S.C. § 1231(a)(1)(C), the removal clock stops ticking if an alien refuses to cooperate in obtaining travel documents. It also tolls if the alien "conspires or acts to prevent [his] removal." *Id.* Common sense (and the Eleventh Circuit) tells us that a person cannot actively thwart his own deportation and then use the resulting delay to demand his freedom. Whether by stubbornly withholding a signature on a required form or by affirmatively taking steps to sabotage the government's efforts, an alien who

5

engineers his own prolonged detention cannot turn around and complain about it. The law does not reward that kind of gamesmanship. *See Quo Zing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal.").

That is precisely the game Williams is playing here. He claims his detention violates the Fifth Amendment, yet his refusal to cooperate with ICE is the very roadblock keeping him in custody.[2] If he signs the paperwork and gets off the bus, his removal is reasonably foreseeable; if he does not, the delay is entirely of his own making. Because Williams is apparently responsible for stalling his own departure, the presumptively reasonable period for his detention is tolled. *See, e.g., Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015). Consequently, the habeas petition is **DENIED WITHOUT PREJUDICE** to Williams refiling a new petition should his current detention be unimpeded and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future.[3] The

---

[2] The Immigration and Nationality Act does not leave an individual without recourse if he objects to his designated destination. The statute provides a framework for contesting removal to a specific third country. *See* 8 U.S.C. § 1231(b). But nowhere in his petition does Williams allege—let alone offer evidence to show—that he has formally challenged his proposed removal to Mexico. Instead, he has apparently dug in his heels and refused to physically depart the United States. Because it seems he bypassed the proper legal channels for contesting his destination, the Court accepts he is legally subject to removal to Mexico.

[3] Williams requests a bond hearing (Doc. 1 at 7, 8), but following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594

6

Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

ORDERED in Fort Myers, Florida on June 1, 2026.

Kyle C. Dudek
United States District Judge

---

U.S. 523, 544 (2021). Under § 1231, detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A).

7